Erik B. Ryberg (AZ Bar No. 023809)
445 W. Simpson Street
Tucson, AZ 85701
Telephone:   (520) 622-3333
E-Mail:      ryberg@seanet.com

John Buse (CA Bar No. 163156)
*pro hac vice* application pending
CENTER FOR BIOLOGICAL DIVERSITY
5656 S. Dorchester Avenue, # 3
Chicago, IL 60637
Telephone:   (323) 533-4416
E-Mail:      jbuse@biologicaldiversity.org

(Additional counsel listed on following page)

Attorneys for Plaintiff
CENTER FOR BIOLOGICAL DIVERSITY


UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA


| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | Civil Case No. |
| Plaintiff | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | |
| DIRK KEMPTHORNE, Secretary of the Interior; H. DALE HALL, Director, U.S. Fish and Wildlife Service; STEVEN L. SPANGLE, Field Supervisor, Arizona Ecological Services Office, U.S. Fish and Wildlife Service, | |
| Defendants. | |

Complaint for Declaratory and Injunctive Relief                                                                                              1

Additional counsel for Plaintiff:

Justin Augustine (CA Bar No. 235561)
*pro hac vice* application pending
CENTER FOR BIOLOGICAL DIVERSITY
1095 Market Street, Suite 511
San Francisco, CA 94103
Telephone:   (415) 436-9682
Fax:              (415) 436-9683
E-Mail:         jaugustine@biologicaldiversity.org

## INTRODUCTION

1. Plaintiff Center for Biological Diversity (the "Center") brings this case under the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, challenging Defendants' (the "Secretary") failure to designate critical habitat and prepare a recovery plan for the largest cat native to the Western Hemisphere – the jaguar (*Panthera onca*). Historical accounts describe jaguar observations from California to the Carolinas, but recent confirmed sightings in the United States have been limited to the border areas of Arizona and New Mexico.

2. Although the jaguar has been protected as an endangered species in the United States since 1997, the Secretary has not designated "critical habitat" – the areas essential for the conservation of the species. Instead, in 2006 the Secretary determined that designating critical habitat for the jaguar is "not prudent." 71 Fed. Reg. 39335 (July 12, 2006). In addition, in the ten years since the jaguar was listed as an endangered species, the Secretary has failed to develop a plan to promote the conservation and eventual recovery of the jaguar although the Secretary has a mandatory duty to develop such a recovery plan under the Endangered Species Act ("ESA").

3. The Center seeks declarations that the Secretary's failure to designate critical habitat and failure to develop a recovery plan for the jaguar violate the ESA and the Administrative Procedure Act ("APA"), and seeks injunctive relief ordering the Secretary to designate critical habitat and develop a final recovery plan for the jaguar.

## JURISDICTION AND VENUE

4. This court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) and (g) (action arising under Endangered Species Act citizen suit provision) and 28 U.S.C. § 1331 (federal question jurisdiction).

5. This Court may grant the relief requested under 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief) and 5 U.S.C. § 701-706 (APA).

6. Pursuant to section 11(g)(2)(C) of the ESA, the Center provided Defendants Kempthorne and Hall with written notice of the Center's intent to file suit based on Defendants' violation of their mandatory duties under section 4(a)(3) and 4(f) of the ESA more than 60 days prior to the commencement of this action. 16 U.S.C. § 1540(g)(2)(C).

7. Defendants have failed to respond to the Center's written notice, and have not corrected their violations of the law. Therefore, an actual controversy currently exists between the parties within the meaning of the Declaratory Judgment Act. 28 U.S.C. § 2201.

8. Venue is proper in the District Court for the District of Arizona pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e)(2) because a substantial part of the events giving rise to the Center's claims occurred in this district and this district contains current and historical jaguar habitat.

## THE PARTIES

9. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit corporation dedicated to the preservation, protection and restoration of biodiversity, native species, and ecosystems. The Center has over 35,000 members worldwide, including members within this district. The Center has offices in Tucson and Phoenix, Arizona; Silver City, New Mexico; Washington, D.C.; San Francisco, Los Angeles, San Diego, and Joshua Tree, California; and Portland, Oregon.

10. The Center's members and staff regularly visit, use, and enjoy areas containing current and/or historic jaguar habitat in the United States, and plan to continue visiting, using, and enjoying these areas in the future. The Center and its members and staff derive environmental, recreational, scientific, and aesthetic benefit from their use and enjoyment of these areas. In addition, the Center and its members and staff derive environmental, recreational, scientific, and aesthetic benefit from the existence of jaguars in the wild. These interests of the Center and its members and staff have been, are, and will be directly, adversely, and irreparably affected by the Secretary's failure to designate critical habitat and to develop and implement a recovery plan for the jaguar. The Center and its members will continue to be prejudiced by Defendants' unlawful actions until and unless this Court provides the relief prayed for in this complaint.

11. The Center previously sued in 1996 to compel the Secretary to issue a final rule listing the jaguar as endangered, and in 2003 to challenge the Secretary's 1997 finding that designating critical habitat for the jaguar was not prudent. In 2004, the

Center obtained a court-approved settlement requiring the Secretary to issue a new critical habitat determination.

12. Defendant DIRK KEMPTHORNE is sued in his official capacity as the Secretary of the Interior. The Secretary is the federal official responsible for complying with the statutory requirements of the ESA for terrestrial species, including the designation of critical habitat and the development and implementation of recovery plans.

13. Defendant H. DALE HALL is sued in his official capacity as the Director of the United States Fish and Wildlife Service (the "Service"). As Director, Mr. Hall is the Service official responsible for complying with and implementing the ESA.

14. Defendant STEVEN L. SPANGLE is sued in his official capacity as Field Supervisor of the Service's Arizona Ecological Services Office. The Field Supervisor is listed as the official Service contact for the July 12, 2006 finding that critical habitat designation for the jaguar was not prudent. 71 Fed. Reg. 39335.

## STATUTORY BACKGROUND

15. The fundamental purpose of the ESA is to provide a program for the conservation of endangered and threatened species and the habitats upon which these species depend. 16 U.S.C. § 1531(b). Under the ESA, the term "conservation" means the use of all methods and procedures to bring any endangered or threatened species to the point at which the protections of the ESA are no longer necessary – that is, to recover species so that they no longer need legal protection. 16 U.S.C. § 1532(3).

16. *Species Listing.* A species receives the full range of protections afforded by the ESA only if it is listed as endangered or threatened. The ESA requires the Secretary

to issue regulations listing species as endangered or threatened based on the present or threatened destruction, modification, or curtailment of a species' habitat or range; overutilization for commercial, recreational, scientific, or educational purposes; disease or predation; the inadequacy of existing regulatory mechanisms; or other natural or manmade factors affecting the species' continued existence. 16 U.S.C. § 1533(a)(1). An endangered species is one "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(a).

17. *Critical Habitat Designation.* Concurrently with listing a species as endangered or threatened, and "to the maximum extent prudent and determinable," the Secretary must also designate "critical habitat." 16 U.S.C. § 1533(a)(3). "Critical habitat" is the area that contains the physical or biological features essential to the conservation of the species and which may require special protection or management considerations. 16 U.S.C. 1532(5)(A). The ESA requires the Secretary to make critical habitat designations and amendments "on the basis of the best scientific data available." 16 U.S.C. § 1533(b)(2).

18. *Recovery Plans.* To achieve the ESA's conservation objective, section 4(f) of the ESA requires the Secretary to develop and implement recovery plans for the conservation and survival of all listed species unless the Secretary finds that a recovery plan will not promote the conservation of the species. 16 U.S.C. § 1533(f). Recovery plans are the foundation for conservation efforts because they establish a blueprint for recovery and eventual removal of the species from the list of endangered species ("delisting"). The ESA requires recovery plans to include a description of site-specific

management actions that may be necessary to achieve the conservation and survival of the species; objective, measurable criteria which, when met, would result in a determination that the species be removed from the list; and estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal.  16 U.S.C. § 1533(f)(1).  It is the Service's stated policy to develop recovery plans within two and a half years after final listing of a species.

19. The APA, 5 U.S.C. §§ 701-706, provides for judicial review of final agency action.

20. Under the authority of the APA, a reviewing court must hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A).  A reviewing court must also compel agency action unlawfully withheld or unreasonably delayed.  5 U.S.C. § 706(1).

## FACTUAL BACKGROUND

21. The jaguar – a "muscular cat[] with relatively short, massive limbs and a deep-chested body" – is the largest contemporary cat native to the Western Hemisphere. 62 Fed. Reg. 39147.  Jaguars are generally buff-colored with distinctive black rosettes.

22. Jaguars are top predators in the ecosystems they inhabit.  The loss of top predators such as jaguars can severely disrupt natural ecosystems.  Jaguars are also considered an umbrella species.  An umbrella species is one that covers a large area or

range of ecosystems in its daily or seasonal movement.  Accordingly, conservation efforts that protect jaguars will necessarily protect many other species.

23. In North America, the jaguar occurs in Mexico and parts of the southwestern United States.  Historical accounts report jaguars in Arizona, New Mexico, California, Texas, Louisiana, the Carolinas, and possibly Colorado.  Fossil records indicate jaguars were also found in Florida.

24. There have been dozens of confirmed sightings of jaguars in the United States since 1996, all in the border regions of Arizona and New Mexico.  These sightings represent at least four individual jaguars.  Based on photographic evidence, at least one of these individuals appears to be residing in the United States.  Historically, jaguars were resident in Arizona, New Mexico, California, Texas, Louisiana, and elsewhere in the southeastern United States range.

25. Human settlement of jaguar habitat, clearing of dense vegetation favored by the species, and the introduction of livestock in historic jaguar range have drastically curtailed the jaguar's range in the United States.  The range and numbers of jaguars in the United States has also declined due to habitat loss and fragmentation, direct persecution (including through predator control), and the inadequacy of existing regulatory mechanisms.  62 Fed. Reg. at 39154-55.

26. The Service has recognized the jaguar as an endangered species since 1972, but initially applied this status only to jaguars south of the United States-Mexican border.  In 1979, the Service issued a notice that stated that United States populations of jaguars

were not protected through an oversight and that the Service intended to take action as quickly as possible to protect these populations. 44 Fed. Reg. 43705.

27. On July 25, 1980, the Service published a proposed rule to list the jaguar in the United States. 45 Fed. Reg. 49844. This proposal was withdrawn on September 17, 1982 based on the Service's contention that the ESA mandated withdrawal of proposed rules to list species that have not been finalized within two years of the proposal. 47 Fed. Reg. 41145.

28. On April 13, 1993, in response to a petition to list the jaguar in the United States, the Service published a finding that the petition presented substantial information indicating that listing may be warranted, and requested public comments and biological data on the status of the jaguar. 58 Fed. Reg. 19216. On July 13, 1994, the Service published a proposed rule to extend endangered status to the jaguar throughout its range. 59 Fed. Reg. 35674.

29. In September 1996, the Center filed a lawsuit to compel the Secretary to make a final listing decision for the jaguar. On July 22, 1997, the Secretary issued a final rule listing the jaguar as an endangered species in the United States. 62 Fed. Reg. 39147.

30. The 1997 listing rule included a determination that designation of critical habitat for the jaguar was not prudent. The primary justification for this not prudent determination was that identification of critical habitat would increase the threat of illegal taking by publicizing the location of jaguars. 62 Fed. Reg. at 39155.

31. In 2003, the Center challenged the Secretary's not prudent determination for jaguar critical habitat designation. As part of a settlement agreement in the suit, the Secretary agreed to revisit the jaguar critical habitat designation.

32. On July 12, 2006, the Secretary issued a new determination that critical habitat designation for the jaguar is not prudent. 71 Fed. Reg. 39335. This time, the Secretary's stated rationale for the not prudent determination was that there are no areas in the United States that meet the definition of critical habitat as the term is defined in the ESA. *Id*.

33. To date, although over ten years have elapsed since the jaguar was listed in the United States, the Service has not developed or implemented a recovery plan for the jaguar.

34. In January 2007, the Service stated that it is not planning to develop a formal recovery plan for the jaguar "at this time."

FIRST CLAIM FOR RELIEF
(Failure to Designate Critical Habitat)

35. Each and every allegation set forth in this Complaint is incorporated herein by reference.

36. The jaguar was listed as an endangered species within the United States in 1997. 62 Fed. Reg. 39147 (July 22, 1997). Section 4(a)(3) requires the Secretary to designate critical habitat for the jaguar concurrently with listing to the maximum extent prudent and determinable.

37. To date, however, the Secretary has not designated critical habitat for the jaguar. Instead, on July 12, 2006, the Secretary issued a final determination that designation of critical habitat for the jaguar was not prudent.

38. The Secretary's not prudent determination for jaguar critical habitat is based on the Service's contention that there is no jaguar habitat in the United States that meets the definition of critical habitat and therefore that critical habitat designation would not be beneficial to the species. 62 Fed. Reg. 39147.

39. The Secretary's not prudent determination provides insufficient evidence that designating critical habitat would not benefit the species. On the contrary, the determination fails to discuss how critical habitat designation would benefit jaguars in the United States and overlooks the Service's own conclusions that habitat destruction and fragmentation within the United States have contributed to the near-extirpation of jaguars in this country.

40. Adverse modification and destruction of habitat that threatens the recovery of jaguars in the United States is ongoing. Current threats to jaguar habitat in the United States include loss of riparian habitat due to urbanization, livestock grazing, mining, and other development; loss of upland habitat due to urban and exurban development; and border development, including fencing, intense night lighting, off-road vehicle use, and vegetation clearing.

41. The Secretary's determination that designating jaguar critical habitat is not prudent is arbitrary and capricious, an abuse of discretion, and not in accordance with law." 5 U.S.C. § 706(2)(A).

42. The Secretary's determination that designating jaguar critical habitat is not prudent was not based on the best scientific data available, contrary to the requirements of the ESA.

43. By failing to designate critical habitat for the jaguar, the Secretary has unlawfully withheld and unreasonably delayed compliance with section 4(a)(3) of the ESA within the meaning of the APA.  5 U.S.C. § 706(1).

SECOND CLAIM FOR RELIEF
(Failure to Develop and Implement a Recovery Plan)

44. Each and every allegation set forth in this Complaint is incorporated herein by reference.

45. Section 4(f) of the ESA requires the Secretary to develop and implement recovery plans for the conservation and survival of all listed species unless he finds that a recovery plan will not promote the conservation of the species.  16 U.S.C. § 1533(f).

46. To date, the Secretary has neither developed nor implemented a recovery plan for the jaguar.  On the contrary, the Service has stated that it does not intend to develop a formal recovery plan for the jaguar "at this time."

47. To date, the Secretary has not determined that a recovery plan would not promote the conservation of the jaguar.  On the contrary, the Service has acknowledged that specific recovery actions would promote the conservation of the jaguar.

48. Based on the current threats to the continued survival of the jaguar, the species would benefit from the development and implementation of a recovery plan that specifies discrete recovery activities within the United States.

49. Service policy specifies that final recovery plans should be developed within two and a half years after a species is listed.  59 Fed. Reg. 34272 (July 1, 1994). The jaguar was listed as an endangered species in the United States in 1997.  The Secretary has thus exceeded the limit specified by the Service's policy by more than seven years.

50. By failing to develop and implement a recovery plan for the jaguar, the Secretary has violated a mandatory duty under section 4(f) of the ESA.

51. By failing to develop and implement a recovery plan for the jaguar, the Secretary has unlawfully withheld and unreasonably delayed compliance with section 4(f) of the ESA within the meaning of the APA.  5 U.S.C. § 706(1).

PRAYER FOR RELIEF

WHEREFORE, the Center respectfully requests that the Court enter judgment providing the following relief:

1. Declare that the Secretary's July 12, 2006 not prudent determination for jaguar critical habitat is arbitrary and capricious, an abuse of discretion, and not in accordance with law;

2. Declare that the Secretary has violated his mandatory duty under section 4(a)(3) of the ESA by failing to designate critical habitat for the jaguar;

3. Declare that the Secretary has unreasonably delayed or unlawfully withheld compliance with section 4(a)(3) of the ESA by failing to designate critical habitat for the jaguar;

4. Declare that the Secretary has violated his mandatory duty under section 4(f) of the ESA by failing to develop and implement a recovery plan for the jaguar;

5. Declare that the Secretary has unreasonably delayed or unlawfully withheld compliance with section 4(f) of the ESA by failing to develop and implement a recovery plan for the jaguar;

6. Order the Secretary, through a permanent injunction, to designate critical habitat for the jaguar;

7. Order the Secretary, through a permanent injunction, to develop and implement a recovery plan for the jaguar;

8. Order the Secretary, through a permanent injunction, to suspend all ongoing consultations, initiate no new consultations, and issue no incidental take statements pursuant to section 7 of the ESA with respect to federal actions that may affect the jaguar pending designation of critical habitat and development of a recovery plan for the jaguar;

9. Award the Center's costs, including reasonable attorney's fees and expert witness fees; and

10. Provide such other relief as the court deems just and proper.


Dated:      August 2, 2007                Respectfully Submitted,


                                          s/ Erik B. Ryberg
                                          Erik B. Ryberg
                                          445 W. Simpson Street
                                          Tucson, AZ 85701
                                          (520) 622-3333

                                          Attorney for Plaintiff
                                          CENTER FOR BIOLOGICAL DIVERSITY


Complaint for Declaratory and Injunctive Relief                                    15